IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY GAYLE, AIS 255812,            :

    Plaintiff,                                    :

vs.                                                     :            CA 12-0740-WS-C

CHARLES E. DAUGHTRY,              :

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. The special report filed by the sole remaining defendant in this case, Correctional Officer Charles E. Daughtry, on March 25, 2013 (Doc. 17), was converted into a motion for summary judgment by order dated March 26, 2013 (Doc. 18); plaintiff has filed an opposition to the defendant's motion for summary judgment (Doc. 27). This cause is before the undersigned for entry of a report and recommendation on the authority of 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4)[1]. After consideration of the foregoing pleadings and the evidence presented by the parties, and for the reasons set forth below, it is recommended that the

---

[1]All prisoner actions filed pursuant to 42 U.S.C. § 1983 attacking conditions of confinement are automatically referred to Magistrate Judges in this Court for hearing and the submission of a recommendation as to the appropriate disposition, as authorized by 28 U.S.C. § 636(b)(1)(B). SD ALA LR 72.2(c)(4).

defendant's motion for summary judgment be granted and that the plaintiff's action against the defendant be dismissed with prejudice.[2]

## FACTS

From its review of the record, the Court summarizes the facts material to the issues addressed in this report and recommendation. According to Plaintiff, on or about November 1, 2012, he told defendant Daughtry that he needed to stop making "threatening state[ment]s to all these inmates." (Doc. 4, Amended Complaint, at 4.) Five days later, on November 6, 2012, Daughtry was cleaning out plaintiff's cell, in the segregation unit of W.C. Holman Correctional Facility ("Holman"), while plaintiff was coming back from the shower. (*Compare* Doc. 17, Exhibit 1, Affidavit of Charles E. Daughtry, at 1 *with* Doc. 17, Exhibit 2, Affidavit of Bernie Ashby, at 1 (Gayle was housed in cell L-35 of the segregation unit).) Plaintiff contends that Daughtry threw his legal papers out of his cell and directed the following comment to him: "[Y]ou think you tough or something; I'll take them handcuff[s] off you[.]" (Doc. 1, Complaint at 6.) For his part, Daughtry maintains that he removed only trash from Gayle's segregation cell during this cleaning process—no personal property or legal mail—and that plaintiff yelled, "You can't come in my cell, get the fuck out!" (Doc. 17, Exhibit 1, Daughtry aff., at 1-2). Officer Daughtry maintains that Plaintiff came into the cell, lowered his shoulder into Daughtry's chest, and used his weight to try to push Daughtry out of the

---

[2]In light of the contents of this report and recommendation, plaintiff's motion requesting a trial of this cause (Doc. 27) is **DENIED**.

cell. (*Id.* at 2.) Officer Daughtry then states that he pushed plaintiff away from him to gain distance. (*Id.*) In contrast, Gayle contends that Daughtry choked and hit him in the back of the head while he was handcuffed behind his back. (Doc. 1, Complaint, at 6.)

As a result of the "choking and hitting" plaintiff avers he was "having problems standing" and was taken to the medical room (Doc. 27, at 2-3), where Nurse Poundexter noticed "injuries to the back of the Plaintiff's neck and swollen head, the shoulders and around the hands, injuries from handcuffs" and noticed "that the incident was much more than a push to create distance." (*Id.* at 3.) Plaintiff's medical records show that he was taken to the prison health care unit at approximately 7:40 p.m. on November 6, 2012, where he reported: "[t]he man choked me up under my neck and slammed me into door." (Doc. 31, Supplemental Special Report, Exhibit 1, at 35.) The nurse noted that plaintiff was "alert and oriented" and had no signs of distress. (*Id.*) His physical examination revealed that he had right shoulder redness, skin was warm and dry to touch, and had no injuries. (*Id.*) Plaintiff was released and returned to his cell. (*Id.*)

On November 8, 2012, prison medical staff evaluated plaintiff; swelling of the left wrist was observed but no open wounds noted at either wrist. (*Id.* at 36.) X-rays of both wrists on November 9, 2012 were normal. (*Id.* at 49.)

On December 7, 2012, Plaintiff filed the present § 1983 action against Daughtry, claiming that the defendant violated his Eighth Amendment rights by using excessive

3

force and retaliating against him on November 6, 2012. (Doc. 1, at 4.) Plaintiff seeks compensatory and punitive damages. (*Id.* at 5.)

In his Special Report and Answer filed on March 25, 2013, Daughtry denies plaintiff's allegations and asserts the defenses of absolute and qualified immunity. (Docs. 16 & 17.) On March 26, 2013, the Court ordered that the defendant's Special Report be treated as a motion for summary judgment. (Doc. 18.) Plaintiff filed a response in opposition to defendant's motion for summary judgment on April 26, 2013. (Doc. 27.)

## **CONCLUSIONS OF LAW**

A.  **Summary Judgment Standard**. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in

4

the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, No. 11–0103–WS–N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be

5

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. 09–745–C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

  **B.** **42 U.S.C. § 1983.** In this action, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of a physical altercation between himself and Officer Charles Daughtry that took place on November 6, 2012, at Holman prison. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

  **C.** **Excessive Force Claim**. The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners, like Plaintiff, from punishment that is "cruel and unusual." *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification . . . [and] the

6

infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim against defendant Daughtry, plaintiff must prove both an objective and subjective component. That is, plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Daughtry "act[ed] with a sufficiently culpable state of mind," i.e., that he acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

Considering, first, the objective element of the excessive use of force claim, plaintiff states that Daughtry choked him and struck him in the back of the head, all while Plaintiff was handcuffed behind his back. (Doc. 4 at 5, Amended Complaint.) Plaintiff claims as a result of Daughtry's assault while he was so handcuffed, he sustained injuries to the back of his head, shoulder and wrists. (Doc. 27 at 3.)

Inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Clark v. Johnson*, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished) (quoting *Hudson*, 503 U.S. at 9-10). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Hudson*, 503 U.S. at 9 (citations omitted). The objective component of an Eighth

Amendment excessive force claim "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). While the Supreme Court in *Hudson* did not define "de minimis use of force," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury. *Id.* at 9 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). At the same time, the court suggested that the degree of injury received is relevant to determining whether more than de minimis force was used. *See id.* at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a de minimis use of force).

In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind. Therefore, if the plaintiff suffered only de minimis injuries, that would be an important factor in determining whether more than de minimis force was used. Plaintiff's medical records show that he was taken to the prison health care unit just minutes after the altercation

8

with Officer Daughtry, and the only objective manifestation of the altercation noted was redness at plaintiff's right shoulder. A few days later, swelling of the left wrist was noted by prison medical staff but x-rays of both wrists were normal. Even if the Court were to assume that plaintiff suffered injuries more serious than those indicated in the prison medical records, those injuries would not support a finding of a constitutional violation under the circumstances of this case. In determining whether the extent of plaintiff's injuries indicates the use of excessive force, the Court finds instructive the types of injuries which have been held by this Court, and other courts, to be insufficient to support excessive force claims under the Eighth Amendment, such as: a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, *Walker v. Thames*, 2001 WL 394911, * 6 (S.D. Ala. 2001) (unpublished); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, *Lanier v. Fralick*, 2000 WL 1844679, *1-2, 5-6 (S.D. Ala. 2000) (unpublished); blow to the forehead with a baton, resulting in no bruising or swelling, *Clark*, 2000 WL 1568337, *18-19; broken bone and digestive problems, *Lassan v. City of Orange* Beach, 2000 WL 1844683 (S.D. Ala. 2000); a sore, bruised ear lasting three days, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a prisoner's back from being shoved into a door frame, *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000);

a bruised shoulder from being shoved into a wall, *Markiewicz v. Washington*, 1999 WL 196596 (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, *Schoka v. Swinney*, 1995 WL 251126 (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and swollen thumb from being hit with keys, *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir. 1994).[3]

Although the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, defendant Daughtry's actions in this case, as described by plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind. Assuming, as plaintiff alleges, that Officer Daughtry unjustifiably choked and struck him in the back of the head, his injuries were de minimis and simply do not support his claim that he was subjected to anything other than de minimis force, which is insufficient to establish a constitutional violation under the Eighth Amendment. While the Court certainly does not condone the unjustified use of force by prison officials, plaintiff's allegations regarding Officer

---

[3]On the other hand, the following types of injuries have been held to be sufficient to support excessive force claims: cuts, scrapes and contusions to the face, head, and body from a group beating, *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, *Escobar v. Zavaras*, 149 F.3d 1190, *3 (10th Cir . 1998) (unpublished); and permanent scarring and numbness from handcuffs, *Davidson v. Flynn*, 32 F.3d 27, 29 n. 1 (2d Cir. 1994).

Daughtry's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment.

Even if Plaintiff had satisfied the objective element of his Eighth Amendment claim, his claim would still fail inasmuch as he has failed to prove the subjective component of his Eighth Amendment claim. In *Hudson*, the Supreme Court recognized that, whenever guards use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22). Thus, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. *Hudson*, 503 U.S. at 7 (*citing* Whitley, 475 U.S. at 321).

Officer Daughtry maintains that while he was cleaning plaintiff's cell, plaintiff came back from the showers, yelled at him, lowered his shoulder and attempted to push him out of the cell. (Doc. 17, Exhibit 1, at 1-2.) Plaintiff does not deny that he yelled at the officer or that he walked into the cell to approach the officer. (Doc. 4 at 4). Under the circumstances, Officer Daughtry could have reasonably perceived plaintiff's conduct to be a threat to prison order and discipline and could have reasonably

believed it necessary to use some measure of force to take physical control of plaintiff and remove him from the cell. The evidence indicates that the force was applied in "a good-faith effort to maintain or restore discipline," not "maliciously and sadistically to cause harm," and that it was not disproportionate to the threat posed by plaintiff. *Hudson*, 503 U.S. at 6. Thus, plaintiff has failed to establish the subjective element of his Eighth Amendment claim.

  **D.**  **Retaliation Claim**. The defendant is also entitled to summary judgment in his favor with respect to plaintiff's claim inasmuch as Gayle presents no specific facts that would support a retaliation claim against Daughtry. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Id.* at 1242. Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Id.* To establish an actionable First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley* 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir.

2005)). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Smith*, 532 F.3d at 1278. Claims alleging unconstitutional retaliation must be factual and mere conclusory allegations of retaliation will not suffice. *Adams v. James*, 797 F.Supp. 940, 948 (M.D. Fla. 1992); *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

In this case, plaintiff asserts that Officer Daughtry assaulted him because he told the defendant a few days prior to the assault to stop threatening inmates. Specifically, plaintiff complains that he told Officer Daughtry on November 1, 2012 that Daughtry "needed to stop making threatening state[ment]s to all these inmates." (Doc. 4, at 4.) However, Officer Daughtry denies ever having words or conflicts with plaintiff before the November 6, 2012 incident. (Doc. 17, Exhibit 1, Daughtry aff., at 1-2) and nothing in the plaintiff's complaint allows the court to reasonably infer that he was assaulted due to a retaliatory motive harbored by Daughtry. In other words, the chronology of events set forth by Gayle fail to convince this Court that his comment to Daughtry on November 1, 2012 was causally related to the defendant's actions on November 6, 2012. Gayle presents a mere conclusory allegation that the defendant's actions were retaliatory. Thus, summary judgment is proper on plaintiff's retaliation claim because

plaintiff has not established a causal relationship between his comment on November 1, 2012 and the alleged assault by Officer Daughtry.

## CONCLUSION

Based upon the foregoing, it is recommended that defendant Charles E. Daughtry's motion for summary judgment (Doc. 17) be granted and that plaintiff's claims against this defendant be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 31st day of July, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**